CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 3 0 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANGEL LUIS MARCHESE, | ) |
| Plaintiff, | ) Civil Action No. 7:18CV00194 |
| v. | ) **MEMORANDUM OPINION** |
| ANDREW SAUL, | ) By: Hon. Glen E. Conrad |
| Commissioner of Social Security,* | ) Senior United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging certain portions of the final decision of the Commissioner of Social Security establishing plaintiff's entitlement to a closed period of disability for purposes of plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff was under a disability from March 1, 2012 through September 25, 2014, but not thereafter. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be less than a

---

\* Andrew Saul is now the Commissioner of Social Security, and he is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d); see also 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks and citation omitted). Thus, "the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The plaintiff, Angel Luis Marchese, was born on August 22, 1971. He did not graduate from high school but eventually earned a GED (Tr. 270). Mr. Marchese has been employed as a laborer and forklift operator. (Tr. 257). He last worked on a regular and sustained basis in 2011. (Tr. 48). On December 5, 2013, Mr. Marchese filed applications for disability insurance benefits and supplemental security income benefits. In filing his current claims, Mr. Marchese alleged that he became disabled for all forms of substantial gainful employment on March 1, 2011, due to lower back pain and arthritis in both hands. (Tr. 216, 269). At the time of an administrative hearing on March 8, 2017, plaintiff amended his applications so as to reflect an alleged disability onset date of March 1, 2012. (Tr. 58). Mr. Marchese maintains that he has remained disabled to the present time. With respect to his application for disability insurance benefits, the record reveals that Mr. Marchese met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See generally 42 U.S.C. §§ 416(i) and 423(a).

Mr. Marchese's applications were denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated May 3, 2017, the Law Judge ruled that Mr. Marchese was disabled for all forms of substantial gainful employment from March 1, 2012 through September 25, 2014, due primarily to right upper extremity impairments that precluded plaintiff from having effective use of his right, dominant hand for handling, fingering, or feeling. However, based on the treatment plaintiff received during that period, including right thumb and wrist surgeries, the Law Judge determined that plaintiff experienced medical improvement as of September 26, 2014, resulting in an increase in his residual functional capacity. The selected date of medical improvement

2

coincided with a post-operative evaluation, at which Mr. Marchese reported to be "doing well" and was found to have "good motion of the digits" with only "minimal discomfort." (Tr. 26, 645).

In his opinion, the Law Judge found that Mr. Marchese continues to suffer from the same severe impairments that were present from March 1, 2012 through September 25, 2014, namely, right hand and wrist osteoarthritis with corrective surgeries, obesity, and lumbago. (Tr. 18, 24). The Law Judge also found that plaintiff "subsequently developed the following additional 'severe' impairments: right trigger finger with corrective surgery, bilateral epicondylitis, and history of left shoulder impingement." (Tr. 24). However, the Law Judge determined that, despite such impairments, Mr. Marchese retained the capacity to perform a broader range of light work activity as of September 26, 2014. The Law Judge assessed plaintiff's residual capacity for the period beginning on that date as follows:

> After careful consideration of the entire record, the undersigned finds that, beginning on September 26, 2014, the claimant has had the residual functional capacity to perform light work as defined in 20 C.F.R. [§§] 404.1567(b) and 416.967(b) except he can never be exposed to hazards like hazardous machinery and unprotected heights; occasionally perform handling, fingering, and feeling with the right hand; and have occasional exposure to temperature extremes, wetness, humidity, and vibrations.

(Tr. 26). Given such a residual functional capacity, and after considering testimony from a vocational expert, the Law Judge determined that Mr. Marchese remains unable to perform any of his past relevant work. (Tr. 33). However, the Law Judge found that since September 26, 2014, Mr. Marchese has possessed the capacity to perform other light work roles that exist in significant numbers in the national economy, such as the jobs of usher and counter clerk. (Tr. 33–34). Accordingly, the Law Judge concluded that plaintiff's disability ended on September 26, 2014, and that he has not become disabled again since that date. See generally 20 C.F.R. §§ 404.1594(f)(8) and 416.994(b)(5)(vii). Thus, the Law Judge ruled that Mr. Marchese was

3

entitled to a closed period of disability from March 1, 2012 through September 25, 2014. (Tr. 34). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Marchese has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159–60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. Although Mr. Marchese has a history of musculoskeletal dysfunction, substantial evidence supports the Law Judge's determination that substantial medical improvement occurred as of September 26, 2014, and that Mr. Marchese has been able to perform certain light work roles since that date.

The record reveals that between March 1, 2012 and October 31, 2013, Mr. Marchese underwent four surgical procedures on his dominant right hand and wrist. On March 22, 2012, plaintiff underwent a right thumb carpometacarpal (CMC) joint arthrodesis at Carilion Clinic's ambulatory surgery center. (Tr. 334–36). Plaintiff's orthopaedic surgeon, Dr. Cay Mierisch, cleared him to return to work in August of 2012. (Tr. 519). Although plaintiff initially progressed well, he returned to Dr. Mierisch in April and May of 2013 with complaints of

4

persistent pain that prevented him from working with his right hand. (Tr. 365, 529). On May 9, 2013, Dr. Mierisch removed surgical hardware and performed tendon tenolysis on two of plaintiff's right thumb tendons. (Tr. 368, 370, 402, 533, 1004). Following the procedure, Mr. Marchese continued to complain of persistent pain that was preventing him from working with his right hand. (Tr. 443–44). On October 28, 2013, Dr. Mierisch performed a right wrist arthroscopy with debridement of ligament tears and synovitis, including the radiocarpal and midcarpal joints. (Tr. 404). Over the next several months, plaintiff continued to complain of thumb and wrist pain. (Tr. 458–59. 462–65, 471). Consequently, on May 15, 2014, Dr. Mierisch performed a right thumb CMC suspension arthroplasty. (Tr. 556).

Treatment notes reflect steady improvement in plaintiff's right hand symptoms following the May 15, 2014 procedure. In June of 2014, Mr. Marchese reported that he was doing well and that his pain was controlled with medications. (Tr. 578). On physical examination, plaintiff had "good range of motion of the digits" and "some discomfort . . . secondary to pain and swelling," which was noted to be "appropriate for this interval of healing." (Tr. 578–79). He was referred to occupational therapy for further treatment. In July of 2014, plaintiff reported continued improvement in his wrist pain, and was found to be "doing well post operatively." (Tr. 581–82). On September 26, 2014, Mr. Marchese was once again found to be "doing well post operatively." (Tr. 645). The examining clinician noted that plaintiff's pain was controlled with medications, and that he had "good motion of the digits with minimal discomfort" and "good opposition." (Tr. 645). The examination report also indicates that Mr. Marchese "state[d] that he has been working as a painter," but plaintiff denied doing so at the administrative hearing. (Tr. 645). Ultimately, plaintiff was advised to continue taking Mobic, a nonsteroidal anti-inflammatory drug, and to continue with range of motion and strengthening exercises. (Tr. 645).

On November 18, 2014, Mr. Marchese presented to Dr. Ayesha Nazli at New Horizons Healthcare with complaints of pain in his left upper arm. Plaintiff reported that he had been "helping [his] uncle . . . move" and had "probably . . . sprained his arm." (Tr. 675). An examination of plaintiff's left arm and shoulder revealed no swelling or redness, and he was found to have full range of motion without pain. (Tr. 675). Dr. Nazli diagnosed plaintiff with a sprain and continued his existing medications.

On November 25, 2014, Mr. Marchese returned to Dr. Mierisch for a follow-up appointment. Plaintiff reported that that he continued to experience pain in his right thumb, and that he could not do any "heavy gripping" or "resume his work as a demolitionist." (Tr. 878). On physical examination, Mr. Marchese was found to have "good motion of the digits with minimal discomfort," "good opposition," and "appropriately" continued weakness. (Tr. 878). An x-ray of plaintiff's right thumb showed that the arthroplasty was intact and revealed only mild arthropathy (joint disease). (Tr. 878, 954). Dr. Mierisch noted that any persistent pain and weakness may be the result of arthritis. He administered an injection of the radiocarpal joint and provided a thumb spica brace. (Tr. 878).

At a follow-up appointment on January 6, 2015, plaintiff advised Dr. Mierisch that his wrist was feeling better, but that he continued to experience tenderness at the base of his thumb. (Tr. 887). On physical examination, plaintiff exhibited reduced grip strength, but continued to have "good range of motion of the digits with minimal discomfort." (Tr. 887). Dr. Mierisch ordered a CT scan to assess the STT joint. The results of the CT scan were "normal except for very mild radiocarpal arthritis." (Tr. 893).

On January 22, 2015, Dr. Mierisch wrote a "To Whom It May Concern" letter confirming that plaintiff had been a patient in his practice since 2010. (Tr. 952). He noted that plaintiff had undergone several non-operative and surgical treatment modalities to address his right thumb

6

impairment, and that plaintiff continues to experience pain in his thumb and wrist that affects his ability to grip and lift. (Tr. 952). Dr. Mierisch specifically opined that plaintiff has a "permanent impairment of his right upper extremity" that "prevent[s] him from returning to jobs requiring manual labor." (Tr. 952).

On February 24, 2015, Mr. Marchese presented to Dr. Nazli with complaints of pain in his left elbow and shoulder. On physical examination, plaintiff was found to have full range of motion in his left elbow without pain. However, he exhibited painful range of motion in his left shoulder. (Tr. 671).

On April 2, 2015, plaintiff returned to Dr. Mierisch for a follow-up appointment. Physical examination findings were unchanged, except for "pain with grip[ping]." (Tr. 893). Dr. Mierisch assessed plaintiff with chronic wrist/thumb pain, but noted that no additional surgery was indicated at that point. He also noted that plaintiff "[w]ill not be able to use [his] right hand for any heavy manual labor in the future" and "[m]ay require long term pain management." (Tr. 894).

On April 6, 2015, Mr. Marchese presented to Carilion Clinic Orthopaedic for an evaluation of his left elbow pain, which had reportedly been present for six months. (Tr. 900). He was diagnosed with left lateral epicondylitis for which he received a cortisone injection. Plaintiff was also provided with a wrist brace and a home exercise program. (Tr. 903).

On May 14, 2015, plaintiff returned to Dr. Nazli for a follow-up appointment. Although Mr. Marchese continued to complain of left shoulder pain, physical examination findings were unremarkable. (Tr. 669).

Dr. Nazli referred plaintiff to Carilion Clinic Orthopaedic, where he was examined again on May 19, 2015. Mr. Marchese reported that his elbow pain had improved since his last visit, but that he had been experiencing shoulder pain for a few months. (Tr. 912). Based on the

7

examination findings, Julie Crocker, a physician's assistant, diagnosed plaintiff with left rotator cuff syndrome. She administered a cortisone injection and provided plaintiff with home exercises. (Tr. 914).

Over the next few months, Mr. Marchese continued to complain of shoulder pain. An MRI study showed "bursitis and tendinosis, but no frank tears." (Tr. 931). Likewise, x-rays revealed no signs of acute osseous injury or arthritis. On August 6, 2015, Dr. Mierisch diagnosed plaintiff with left shoulder subacromial impingement. Based on the clinical findings and the lack of success with nonoperative treatment, Dr. Mierisch recommended that plaintiff undergo arthroscopic surgery. (Tr. 933). The surgical procedure was performed on September 16, 2015. (Tr. 942).

Treatment records reflect that plaintiff's symptoms improved following the procedure. On September 22, 2015, Mr. Marchese reported that he was "doing well" and that his pain was controlled with medications. (Tr. 942). The same was true in October of 2015. Plaintiff was observed to be "doing well post operatively," and reported "slow and steady progress with both pain and [range of motion]." (Tr. 949).

Five months later, in March of 2017, Mr. Marchese presented to Carilion Clinic Orthopaedic with a new complaint of "right ring finger catching" for which he had not yet received any treatment. (Tr. 962). Plaintiff also complained of right elbow pain and increased pain with gripping and lifting. Dr. Mierisch diagnosed plaintiff with trigger finger and epicondylitis. (Tr. 965). He administered a trigger finger injection, and recommended home exercises and Voltaren cream for plaintiff's elbow symptoms.

At a follow-up appointment on April 28, 2016, Mr. Marchese reported some improvement with his right ring finger, but worsening pain in his right elbow. (Tr. 973). X-rays of the elbow

8

revealed no acute osseous changes. (Tr. 976). Dr. Mierisch administered an elbow injection and advised plaintiff to continue with his home exercise regimen. (Tr. 976).

Mr. Marchese returned to Dr. Mierisch on September 13, 2016. He reported that the right ring finger pain had returned following the injection, and expressed interest in surgery. (Tr. 993). On October 3, 2016, Dr. Mierisch performed a trigger release procedure. (Tr. 1004).

Four months later, on January 31, 2017, Mr. Marchese presented to Dr. Mierisch for an evaluation of his right elbow. Plaintiff described his pain as "moderate," and indicated that it was "confined to [the] medial and . . . associated with no other symptoms." (Tr. 1003). Electrodiagnostic studies, which were obtained to assess plaintiff for cubital tunnel syndrome, were "normal." (Tr. 1003). On physical examination, plaintiff exhibited some right elbow tenderness and a few positive stress test signs. (Tr. 1007). However, plaintiff had full flexion, extension, and pronation range of motion, and his elbow showed no signs of an obvious deformity or edema. Dr. Mierisch recommended that plaintiff undergo a right elbow medial epicondylectomy and concurrent ulna collateral ligament reconstruction. A subsequent MRI of plaintiff's right elbow revealed tendinosis of the common exterior origin, but no findings to explain the reported ulnar-sided pain. (Tr. 1014).

At the time of the administrative hearing on March 8, 2017, plaintiff had not yet undergone surgery on his right elbow. Mr. Marchese testified that the surgical procedure was scheduled for the following day. However, the record does not contain any evidence confirming that the procedure was actually performed.

During the administrative hearing, Mr. Marchese testified that he attempted to look for less strenuous work in 2012, but his "health just wasn't good at all." (Tr. 49). When asked to address the physical activity described in his medical records, plaintiff denied doing work as a painter. As for the evidence indicating that he had previously helped his uncle move, Mr. Marchese testified

9

that he tried to help his uncle move a large box but was unable to do it. (Tr. 54–55). Mr. Marchese denied being able to effectively use his right arm to perform any type of work. (Tr. 59). Mr. Marchese also testified that he has to lie down "all the time" because of pain. (Tr. 61).

After considering all of the evidence of record, the Law Judge found that Mr. Marchese was disabled for all forms of substantial gainful activity from March 1, 2012 (his alleged onset date) through September 25, 2014. The Law Judge's finding in this regard resulted from his determination that the plaintiff had "no effective use of his right hand for handling, fingering, or feeling" during that period, but could otherwise perform light work. (Tr. 19). Based on the testimony of a vocational expert, the Law Judge found that such restrictions rendered plaintiff unable to perform his past relevant work from March 1, 2012 through September 25, 2014, and that there were no other jobs in the national economy that plaintiff was capable of performing without having effective use of his right hand. (Tr. 23–24). However, as indicated above, the Law Judge determined that Mr. Marchese experienced medical improvement as of September 26, 2014, which gave rise to a less restrictive residual functional capacity. Specifically, the Law Judge determined that Mr. Marchese regained the capacity to perform light work with the following restrictions: "[H]e can never be exposed to hazards like hazardous machinery and unprotected heights; occasionally perform handling, fingering, and feeling with the right hand; and have occasional exposure to temperature extremes, wetness, humidity, and vibrations. (Tr. 26). After considering the plaintiff's characteristics and the testimony of the vocational expert, the Law Judge concluded that plaintiff could not perform any of his past relevant work, but could perform other work roles existing in significant number in the national economy. (Tr. 33–34). Therefore, the Law Judge found that plaintiff's disability ended on September 26, 2014, and that plaintiff has not become disabled again since that date. (Tr. 34).

On appeal to this court, plaintiff, through counsel, makes several arguments in support of his motion for summary judgment. First, Mr. Marchese argues that the Law Judge erred in finding medical improvement as of September 26, 2014. In deciding whether an individual's disability continues through the date of his decision, the Law Judge "must determine if there has been any medical improvement in [the claimant's] impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work." 20 C.F.R. §§ 404.1594(a), 416.994(a). Medical improvement is defined as "any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled." 20 C.F.R. §§ 1594(b), 416.994(b). "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairments." Id.

Upon review of the record, the court concludes that the Law Judge's finding of medical improvement is supported by substantial evidence. As indicated above, the Law Judge found Mr. Marchese disabled from the period of March 1, 2012 through September 25, 2014, because his right hand and wrist impairments were of such severity that plaintiff had "no effective use of his right hand for handling, fingering, or feeling." (Tr. 19). The Law Judge determined that plaintiff could not perform any jobs in the economy with such limitations. In finding Mr. Marchese disabled for that period, the Law Judge relied on clinical findings and the plaintiff's allegations with respect to his right hand and wrist problems, which the Law Judge found to be generally consistent with the objective medical evidence through September 25, 2014. (Tr. 19). The Law Judge also considered the procedures Mr. Marchese underwent to treat his right upper extremity impairments during that period, which included four surgeries on his right hand and wrist. (Tr. 19–22).

11

The record supports the Law Judge's finding that, following the plaintiff's right thumb surgery in May of 2014, his condition gradually improved to the point that, by September 26, 2014, the plaintiff could occasionally perform handling, fingering, and feeling with his right hand. On that date, Mr. Marchese reported that he was "doing well," that his pain was controlled with medications, and that his range of motion had improved. (Tr. 645). On physical examination, the plaintiff was found to be "doing well post operatively." (Tr. 645). He exhibited "[g]ood opposition" and "good motion of the digits," with only "minimal discomfort." (Tr. 645). Additionally, the Law Judge reasonably observed that the fact that plaintiff helped his uncle move less than two months later further supported the conclusion that he "had regained some of his ability to use his right hand by that time, despite ongoing difficulties." (Tr. 26). Although Dr. Mierisch subsequently noted in April of 2015 that plaintiff would "not be able to use [his] right hand for any heavy manual labor in the future," Dr. Mierisch at no point suggested that plaintiff would not be able to effectively use his right hand at all. (Tr. 894) (emphasis added). Moreover, several months passed without significant medical treatment for plaintiff's right hand. It was not until March of 2016 that plaintiff saw Dr. Mierisch for right ring finger catching, which was an entirely new impairment. (Tr. 962) ("Treatment to date has been none."). Even then, Mr. Marchese continued to exhibit normal strength and range of motion in his wrist and fingers, and there are no documented complications or complaints of finger pain following the trigger finger release procedure performed in October of 2016. (Tr. 964, 976, 987, 996). For these reasons, the court concludes that substantial evidence supports the Law Judge's finding that plaintiff experienced medical improvement in his ability to use his right hand.

Mr. Marchese next argues that the Law Judge failed to properly consider treatment records related to his left shoulder and left elbow. Upon review of the record, however, the court is unable to agree. The Law Judge recognized that Mr. Marchese was treated for left elbow pain

12

(epicondylitis) and left shoulder impingement in 2015, but determined that such impairments were not so severe as to prevent performance of a reduced range of light work. As the Law Judge noted in his decision, plaintiff's "left-sided complaints appear to have responded fairly well to treatment." (Tr. 31). Mr. Marchese "note[d] improvement in the elbow pain" after a cortisone injection in April of 2015. (Tr. 912, 922). Although plaintiff ultimately required arthroscopic surgery on his left shoulder in September of 2015, he was found to be "doing well post operatively" and reported that his pain was "controlled with medications." (Tr. 942, 949). Plaintiff also reported experiencing slow but steady progress with his shoulder pain and range of motion, and he was found to have "good elbow [range of motion]." (Tr. 942, 949). Accordingly, the court is satisfied that substantial evidence supports the Law Judge's assessment of plaintiff's left-sided impairments.

The court must also reject Mr. Marchese's argument that the Law Judge failed to properly consider his right elbow impairment. The Law Judge recognized that plaintiff was diagnosed with right lateral epicondylitis in 2016, and that he was scheduled to undergo surgery after the administrative hearing. (Tr. 31). However, the Law Judge determined that "it would be unreasonably speculative to make assumptions about his postoperative course at this stage," since there was no evidence regarding the surgery or plaintiff's condition following it. (Tr. 31). The Law Judge also accurately noted that a preoperative examination of the right elbow showed "isolated tenderness and some loss of flexion, but normal range of motion otherwise, normal circulation and sensation, and no obvious deformity." (Tr. 31, 1007). Upon review of the record, the court finds no error in the Law Judge's assessment of plaintiff's right elbow impairment.

Finally, Mr. Marchese argues that the Law Judge's findings as to his residual functional capacity since September 26, 2014 are not supported by substantial evidence. In particular,

plaintiff argues that the Law Judge erred in failing to include any left upper extremity limitations or any limitation on plaintiff's ability to reach. To support this argument, plaintiff once again cites to the fact that Mr. Marchese underwent surgery on his left shoulder and was scheduled to undergo surgery on his right elbow. However, the mere fact that surgery was recommended or performed does not conclusively establish that plaintiff had additional functional limitations or is otherwise disabled for all forms of substantial gainful employment. See Randolph v. Berryhill, No. 6:18-cv-1271, 2019 U.S. Dist. LEXIS 31122, at *12 (N.D. Ala. Feb. 27, 2019) ("[T]reatment records reveal that claimant suffered from lumbar and cervical pain that required three separate surgeries, but the mere fact that claimant . . . underwent surgery . . . does not establish his disability."); Torres v. Comm'r of Soc. Sec., No. 6:13-cv-1687, 2015 U.S. Dist. LEXIS 25556, at *17 (M.D. Fla. Mar. 3, 2015) ("[U]ndergoing two surgeries, in and of themselves, does not establish that [a claimant] was disabled or had any functional limitations."). As indicated above, Mr. Marchese was found to have "good elbow range of motion" and steadily progressing range of motion in his left shoulder following the arthroscopic procedure performed in September of 2015, and he exhibited full range of motion in his right elbow on January 31, 2017, except for slightly limited flexion. (Tr. 949, 1007). In determining plaintiff's residual functional capacity as of September 26, 2014, the Law Judge carefully considered the objective medical evidence, the plaintiff's treatment history, and Dr. Mierisch's opinion that plaintiff cannot use his right hand for any "heavy manual labor." (Tr. 894). The court is satisfied that the Law Judge's assessment of plaintiff's residual functional capacity is supported by substantial evidence.

In affirming the Commissioner's final decision, the court does not suggest that Mr. Marchese is free of all pain and discomfort. Indeed, the medical record confirms that plaintiff suffers from musculoskeletal impairments that can be expected to result in subjective limitations. However, substantial evidence supports the Law Judge's finding that plaintiff's right wrist and

14

hand symptoms have decreased in severity and no longer cause the disabling limitations that existed prior to September 26, 2014. Although Mr. Marchese has been diagnosed with and treated for additional impairments since that date, the subsequent medical records simply do not include clinical findings or objective test results that are consistent with totally disabling symptomatology. It must be recognized that the inability to work without any subjective complaints does not of itself render a claimant disabled. See Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996). It appears to the court that the Law Judge considered all of the medical evidence, as well as all of the subjective factors reasonably supported by the record, in adjudicating Mr. Marchese's claims for benefits. Thus, the court concludes that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, the resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, 402 U.S. at 400–01; Craig, 76 F.3d at 589; Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed.

The Clerk is directed to send copies of this memorandum opinion to all counsel of record.

DATED: This 27th day of September, 2019.

*/s/ Glen Conrad*
Senior United States District Judge